IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TYRIN N. SMITH, # B-78535,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 14-cv-372-JPG |
| ) | |
| **SALBADORE A. GODINEZ,** ) | |
| **RICHARD HARRINGTON,** ) | |
| **L. PHELPS, KEVIN E. REICHERT,** ) | |
| **BRANDON M. ANTHONY,** ) | |
| **TIMOTHY R. VEATH,** ) | |
| **JASON P. VASQUEZ,** ) | |
| **ANTHONY D. WILLS,** ) | |
| **and LINDA CARTER,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He is serving a 50-year sentence for murder. Plaintiff claims that he was wrongfully found guilty of several disciplinary charges in violation of his due process rights, after which he was punished with one year in segregation and a loss of one year of good conduct credits.

According to the complaint, Plaintiff was in the chow hall on May 27, 2013, along with approximately 35 other inmates (Doc. 1, p. 9). He heard a commotion, then a gunshot fired by a tower officer, so he immediately dropped to the floor. Another inmate (Walker) had been stabbed. Three other prisoners were identified on the spot as the perpetrators. Plaintiff and the other inmates were sent back to their cells.

Several hours later, Plaintiff was called to an interview about the incident with Defendant

Reichert of Internal Affairs; he answered all questions and denied any involvement in the attack. However, Plaintiff was placed on "investigative status" by Defendant Phelps (Internal Affairs).

On June 4, 2013, Defendant Reichert and/or Defendant Anthony wrote an Inmate Disciplinary Report ("IDR") on Plaintiff charging him with a violation of "205-Security Threat Group" (Doc. 1, pp. 10, 16; Doc. 1-1, p. 2). The factual description stated that Plaintiff was identified by four confidential sources as "violently assaulting Walker from behind with an 8 [inch] ice-pick style weapon" on May 27, 2013 (Doc. 1, p. 10). Plaintiff requested two witnesses (inmates James Melvin and McCall Cleveland) to be called to testify to his innocence at the Adjustment Committee hearing.

On June 6, 2013, the 205 charge against Plaintiff was heard by Defendants Veath and Vasquez (chair and co-chair of the Adjustment Committee). They found Plaintiff guilty and he was disciplined with one year in segregation, as well as one year of C-grade and commissary restriction, and six months' restriction on contact visits (Doc. 1, p. 11). The Committee's final summary report reflected that Plaintiff's witness James Melvin testified that Plaintiff had nothing to do with the incident; Officer Bryan Easton testified that he "believe[d] the IDR is correct as written;" Officer Amylee Jetton stated he picked out who he thought was involved and handed it over to "intel" to investigate; and Plaintiff had been identified by four confidential sources as "assisting in the violent assault." *Id*. Defendant Harrington (Menard warden) approved the disposition.

Plaintiff received a second IDR on June 9, 2013, based on the same assault incident (Doc. 1, p. 12; Doc. 1-1, pp. 4-7). This time, he was charged with three different infractions: 100-Violent Assault of any Person; 104-Dangerous Contraband; and 105-Dangerous Disturbance. The factual description of the incident was identical to that in the first IDR. Plaintiff again

requested inmates Melvin and Cleveland to be called as his witnesses.

On June 11, 2013, the second IDR came before the Adjustment Committee, made up of Defendants Veath and Wills (Doc. 1, p. 12). Despite his declaration of innocence, Plaintiff was again found guilty. This time, his punishment consisted of the revocation of one year of good conduct credits, as well as one year segregation, C-grade, and commissary restriction, and three months of yard restriction. The report again summarized the identical testimony of witnesses Melvin, Easton, and Jetton (Doc. 1, p. 12-13). Neither final summary report mentioned Plaintiff's other requested witness (Cleveland) or explained why he had not been called.

Contrary to the IDR summaries, however, Plaintiff later learned that neither inmate James Melvin nor Officer Easton had ever been called to testify before the Adjustment Committee in reference to either of the two IDR hearings (Doc. 1, p. 13-15). Plaintiff obtained affidavits from Melvin and Cleveland; both of them had been interviewed by Internal Affairs and stated Plaintiff was not involved in the stabbing and was some distance away from the victim (Doc. 1-1, pp. 8-11). Officer Easton could not provide a sworn affidavit but told Plaintiff he had never been called to either hearing.

On June 29, 2013, Plaintiff filed a grievance requesting that all charges and disciplinary actions be expunged, because of alleged violations of his constitutional rights and of several prison administrative rules (Doc. 1-1, pp. 13-19). He filed a second grievance on July 1, 2013, focusing on the second IDR and arguing that he was improperly given duplicate punishment for the same incident (Doc. 1-1, pp. 23-30). Defendant Linda Carter (grievance officer) denied the grievances (Doc. 1, p. 16). After Plaintiff appealed, the duplicate discipline imposed on the first charge (205) was adjusted so that he would be required to serve only a single year in segregation, as well as one year of C-grade and commissary restriction (Doc. 1, p. 16; Doc. 1-1, p. 12).

However, the "conviction" on the 205 charge would still stand, as well as the six-month contact visit restriction. Plaintiff pursued another grievance seeking to have all the charges expunged, but this was again denied by Defendant Carter as well as by Defendant Godinez (IDOC Director).

Plaintiff claims that his procedural due process rights were violated because the IDR failed to contain a statement of the conduct observed by the four confidential sources; the committee adopted the reporting officer's version of events and did not weigh the credibility of the confidential sources against Plaintiff's requested witnesses; the second IDR was filed beyond the allowable time frame provided in prison administrative rules; the committee failed to call either of his requested witnesses or explain why they were not called; and the committee falsified its report to reflect that inmate Melvin and Officer Easton were called to the hearings when they were not (Doc. 1, pp. 17-20). He also brings up several other violations of prison administrative rules in the handling of his investigative detention (Doc. 1, pp. 21-23), and asserts a claim against Defendant Carter for failing to expunge the disciplinary charges (Doc. 1, p. 23).

As relief, Plaintiff seeks an order expunging all the disciplinary charges and convictions, as well as awarding him damages for each day spent in segregation (Doc. 1, p. 25).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal for failure to state a claim upon which relief may be granted. Plaintiff's claims may be summarized as follows; each will be discussed in turn:

**Count 1:** Defendants violated Plaintiff's Fourteenth Amendment due process rights when they found him guilty and punished him with one year of segregation and the loss of one year of good conduct credits, based on falsified and insufficient evidence and after refusing to call his witnesses;

**Count 2:** Defendants violated several provisions of the administrative rules governing disciplinary procedures, including filing the second IDR outside the required time frame and failing to review his placement in investigative detention;

**Count 3:** Defendants Carter and Godinez failed to expunge the disciplinary charges and punishments in response to Plaintiff's grievances.

### Dismissal of Count 1 – Due Process Violations

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out the minimal procedural protections that must be provided to a prisoner in disciplinary proceedings in which the prisoner loses good time, is confined to disciplinary segregation, or otherwise subjected to some comparable deprivation of a constitutionally protected liberty interest. *Id.* at 556-572.

> *Wolff* required that inmates facing disciplinary charges for misconduct be accorded [1] 24 hours' advance written notice of the charges against them; [2] a right to call witnesses and present documentary evidence in defense, unless doing so would jeopardize institutional safety or correctional goals; [3] the aid of a staff member or inmate in presenting a defense, provided the inmate is illiterate or the issues complex; [4] an impartial tribunal; and [5] a written statement of reasons relied on by the tribunal. 418 U.S. at 563-572.

*Hewitt v. Helms*, 459 U.S. 460, 466 n.3 (1983). The Supreme Court has also held that due process requires that the findings of the disciplinary tribunal must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999).

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing

> of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Hill*, 472 U.S. at 455-56. Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Plaintiff's chief due process concern in light of the *Wolff* standards is the failure of the Adjustment Committee to call either of his requested witnesses, coupled with the summary that falsely stated one witness did testify. He also implies possible bias on the part of the tribunal, and raises other issues that do not implicate the *Wolff* requirements. However, his claim involves a challenge to a disciplinary sanction that affects the length of his confinement (the loss of good conduct credits) as well as the conditions of that confinement (segregation and loss of privileges). As such, the Court must determine whether Plaintiff may maintain this claim in the context of a civil rights action, or whether it must instead be brought in a habeas petition.

> Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action. Some cases are hybrids, with a prisoner seeking relief unavailable in habeas, notably damages, but on allegations that not only support a claim for recompense, but imply the invalidity either of an underlying conviction or of a particular ground for denying release short of serving the maximum term of confinement.

*Muhammad v. Close*, 540 U.S. 749, 750-51 (2004) (citation omitted).

The case at bar is just such a hybrid case; Plaintiff is seeking relief in the form of damages, which is unavailable in a habeas proceeding, as well as restoration of his good conduct credits. Aside from the fact that restoration of sentence credits can only be obtained through habeas corpus, an award of damages based on the claim that Plaintiff was unconstitutionally subjected to disciplinary action would necessarily call into question the validity of the loss of good time, since both punishments were imposed as a result of the same disciplinary action (the second IDR). A due process claim must be dismissed if "the principal procedural defect would,

if established, necessarily imply the invalidity of the deprivation of [the] good-time credits." *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). This is precisely the situation with Plaintiff's due process claims.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (emphasis in original). "We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489.

In applying the principle of *Heck*, "the ruling in a prison disciplinary proceeding is a conviction. *Edwards v. Balisok*, 520 U.S. 641 (1997); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008)." *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011). "So *Heck* forbids a prisoner in his civil rights case to challenge a finding in his criminal or prison-discipline case that was essential to the decision in that case; if he insists on doing that, the civil rights case must be dismissed. *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003)." *Moore*, 652 F.3d. at 723.

Under this authority, all of Plaintiff's due process claims must be dismissed at this juncture, for failure to state a claim upon which relief may be granted. Even though the revocation of good conduct credits was imposed on only one of the "convictions" (the 100-Violent Assault, and related 104 and 105 charges), it is impossible to separate this punishment from the concurrent segregation term that Plaintiff was given for the 205-Security Threat Group violation. All the violations stemmed from the same incident, and any award of damages in Plaintiff's favor would necessarily imply the invalidity of the "conviction" that led to the good-time revocation.

Plaintiff may bring a challenge to his "convictions" in the above-referenced prison disciplinary actions in a habeas corpus action pursuant to 28 U.S.C. § 2254, but only after he has presented all of his claims to the Illinois courts. Ordinarily, this will involve raising every issue at trial or in a post-conviction motion, and appealing any adverse decisions to the Illinois Appellate Court and the Illinois Supreme Court. The Illinois courts have recognized mandamus[1] as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill.App. 1981)). The State of Illinois must first be afforded an opportunity to consider the merits of Plaintiff's claims. Accordingly, Count 1 shall be dismissed without prejudice to Plaintiff bringing his claims in a properly filed habeas corpus action, **but only after he has exhausted his state court remedies**. If he is successful in challenging the disciplinary action that resulted in the loss of good conduct time, he may re-file his civil rights claim.

---

[1] *See* 735 ILLINOIS COMPILED STATUTES 5/14-101 *et seq*.

**Dismissal of Count 2 – Violations of Administrative Rules**

Plaintiff cites several instances where prison administrative rules were not properly followed in the course of the disciplinary procedures, for example, failure to file the second set of disciplinary charges within the required time frame and failure to conduct a proper or timely review of his initial placement in investigative detention. Even if these actions or omissions did in fact violate the applicable rules, such a violation does not give rise to a constitutional claim. "The federal government is not the enforcer of state law." *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Nor does a federal court provide a remedy for violations of state regulations, such as Plaintiff asserts herein. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied*, 489 U.S. 1065 (1989).

Accordingly, Plaintiff's civil rights claims based on violations of administrative rules, designated as Count 2, shall be dismissed with prejudice.

**Dismissal of Count 3 – Denial of Grievances**

Finally, Plaintiff asserts claims against those Defendants who received and reviewed the grievances he filed to challenge the disciplinary actions, and failed to reverse or expunge the guilty findings or punishments imposed. However, a prison official's failure to favorably resolve a prisoner's grievances, like the mishandling or neglect of grievances, does not give rise to a constitutional claim.

The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Further, "a state's inmate grievance procedures do not give

rise to a liberty interest protected by the Due Process Clause." *Antonelli*, 81 F.3d at 1430. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). A defendant's role in responding to prisoner grievances does not constitute "personal involvement" in the alleged constitutional deprivation that gave rise to the grievance.

Plaintiff does not allege that the Defendants who denied his grievances were involved personally in the conduct that gave rise to those grievances, namely, issuing and adjudicating the disciplinary reports. Further, to the extent that Defendants Harrington, Godinez, or other supervisory personnel reviewed and approved the imposition of discipline recommended by the Adjustment Committee, such administrative review also does not constitute the "personal involvement" that might give rise to liability, if there had been a constitutional violation in the first instance. There is no supervisory liability in a civil rights action, because the doctrine of *respondeat superior* is not applicable in this context. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).

For these reasons, Count 3 shall be dismissed with prejudice.

**Disposition**

**COUNT 1** is **DISMISSED** for failure to state a claim upon which relief may be granted, without prejudice to Plaintiff bringing a challenge to the revocation of his good conduct credits in state court, or in a habeas action following the exhaustion of all state court remedies.

**COUNTS 2 and 3** are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

All claims having been dismissed, this entire action is **DISMISSED** for failure to state a

claim upon which relief may be granted.  All pending motions are **DENIED AS MOOT.**

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  A dismissal without prejudice may count as a strike, so long as the dismissal is made because the action is frivolous, malicious, or fails to state a claim.  *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011); *Evans v. Ill. Dep't of Corr*. 150 F.3d 810, 811 (7th Cir. 1998).

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal.  *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: April 18, 2014**

*s/ J. Phil Gilbert*
United States District Judge
